Leo J. Hagerty, J.
Pursuant to an order of Special Term, petitioner herein was produced before me on April 22, 1957 for a hearing on his application for an order to vacate a sentence of not less than 15 years nor more than 60 years imposed upon him by Munson, J., on April 25, 1952, as a result of the verdict of a jury convicting him of the crimes of robbery in the first degree and violating subdivision 5-a of section 1897 of the Penal Law by having a loaded firearm concealed on his person, and to set aside the judgment of conviction on the ground that the trial court failed to comply with the mandatory provisions of sections 433 and 451 of the Code of Criminal Procedure at his trial, and further failed to comply with the provisions of section 1943 of the Penal Law before sentence was imposed on him as a second offender. Petitioner took the witness stand and testified concerning his claims of legal irregularities committed by the court at his trial and sentencing. His credibility immediately was at issue.
The court soon learned that petitioner who had offered himself as a witness was a convicted thief, robber and a gunman who was trying to free himself from a long term of imprisonment which he had apparently earned by virtue of his vicious criminal activities.
Certainly, when a jury is required to carefully scrutinize the testimony of an interested witness in the trial of any case, a court, when acting as a judge of the facts, should do no less.
Besides, the testimony of petitioner was vague and contradictory and seemed to be based upon his willingness, despite the taking of an oath, to testify to anything or in any manner which would unlock the prison gates for him. This should not be and was not too surprising.
Petitioner’s testimony concerning what happened when the jury returned to the courtroom to report its verdict at his trial was downright amazing to this court, in view of its many years of experience as an observer of court trials in the capacity of a newspaper reporter, assistant district attorney, in private practice, district attorney and on the bench for more than 10 years.
*855 Taking petitioner’s version of what happened when the verdict of guilty was reported against him, this is what he wishes to have the court believe:
Several unidentified persons — who apparently constituted the jury — marched into the courtroom; whether there were 10, 11, 12, 13 or 14 of these persons he does not know and nobody made any effort to find out; some one of these persons announced that “We find the defendant guilty as charged ”, and, without further ado, these persons marched right out again.
This court has never seen a jury report to a court without the clerk having called the jury’s names, asked them if they had agreed upon a verdict, what their verdict was and then repeat their verdict to them to ascertain whether that was the jury’s verdict. Never has this court seen a clerk of a court' or the court itself, fail to make certain that all of the trial jurors were present, that the jury had agreed upon a verdict, what that verdict was and that all the jurors agreed that the verdict which had been announced by the jury’s spokesman and repeated by the clerk was the agreed verdict of the jury.
The late Samuel Fleischman was counsel for petitioner at his trial and when he was sentenced. Perhaps he could have secured a more able so-called criminal attorney. It would have been a little difficult for any court to have found for petitioner a lawyer of more experience in the defense of criminal cases.
The judgment of conviction was appealed and the Appellate Division, Fourth Department, unanimously affirmed it. (281 App. Div. 1067.)
None of the alleged legal irregularities of which petitioner complains now was brought to the attention of the appellate court on this appeal. If petitioner is to be believed, Mr. Fleischman was not conscious of what went on at petitioner’s trial and sentencing. It probably took the services of the always available “ prison lawyer ”, i.e., an inmate of a prison who reads law in prison, to arouse the imagination of petitioner as to how he was deprived of his rights and made the victim of alleged legal irregularities.
Of course, an examination of the court clerk’s minutes disclosed that the clerk had made the usual entry when the jury returned, to wit: £ £ The jury returns into court. The defendant and his counsel are present. The jury says it finds the defendant guilty, etc.” What does this entry by the clerk mean? This court has learned through experience that such an entry in the minutes by the clerk means, as the clerk in this case *856 explained under oath, that the jury returned to the courtroom, that the clerk called their names to make certain that all the trial jurors were present, that the clerk asked them whether they had agreed on a verdict, that it was announced by the foreman that the jury had agreed on a verdict, that the jury was asked what the verdict was that they had agreed on, that the verdict was specified by the foreman and that the clerk had repeated to the jury the verdict as it was announced by the foreman to make certain that all the jurors knew what their verdict was and how it was being recorded in the court’s records.
This was unquestionably the way it was done in petitioner’s trial. Then the clerk did what all clerks seem to have done for years. He made an entry as quoted above.
This court finds that the claims of petitioner concerning alleged legal irregularities in connection with his trial and sentencing are completely baseless and that he was accorded all his legal rights by the court and the clerk and all others who participated in his trial and sentencing.
Petitioner’s application to vacate his sentence and to set aside the jury’s verdict of guilt is denied.
Submit order.